Leonard M. Shulman – Bar No. 126349
James C. Bastian – Bar No. 175415
Ryan D. O'Dea – Bar No. 273478
**SHULMAN HODGES & BASTIAN LLP**
100 Spectrum Center Drive, Suite 600
Irvine, California 92618
Telephone: (949) 340-3400
Facsimile: (949) 340-3000
E-mail: lshulman@shbllp.com
    jbastian@shbllp.com
    rodea@shbllp.com

Attorneys for Richard A. Marshack
Chapter 7 Trustee

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>**PHILLIP BARRY GREER,**<br><br>Debtor. | Case No. 8:18-bk-10203-MW<br><br>Chapter 7<br><br>Adv. Case No. 8:18-ap-01069-MW |
| **RICHARD A. MARSHACK, solely in his capacity as the Chapter 7 Trustee,**<br><br>Plaintiff,<br><br>v.<br><br>**ARLENE C. BIDEN, aka ARLENE C. GREER.**<br><br>Defendant. | **CHAPTER 7 TRUSTEE'S SECOND AMENDED COMPLAINT FOR:**<br><br>**(1) AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFER;**<br><br>**(2) CONSTRUCTIVE TRUST;**<br><br>**(3) DECLARATORY RELIEF;**<br><br>**(4) TURNOVER OF ESTATE PROPERTY; AND**<br><br>**(5) AUTHORIZATION TO SELL ENTIRETY OF REAL PROPERTY**<br><br>**REGARDING REAL PROPERTY LOCATED AT 19 BRIDGEPORT RD., NEWPORT COAST, CALIFORNIA** |

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Centre Drive
Suite 600
Irvine, CA 92618

5447-000\1353574.1

1

Richard A. Marshack, the duly appointed, qualified and acting Chapter 7 Trustee ("Plaintiff") of the bankruptcy estate of Phillip Barry Greer ("Debtor") in the above-captioned bankruptcy case, alleges as follows:

## STATEMENT OF JURISDICTION AND VENUE

1.  This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334. Regardless of whether this proceeding is core, non-core, or otherwise, Plaintiff consents to the entry of a final order and judgment by the Bankruptcy Court.

2.  This adversary proceeding arises out of and is related to Debtor's bankruptcy case, which was commenced through the filing of a voluntary petition for relief under Chapter 7 of the Bankruptcy Code by Debtor on January 22, 2018 ("Petition Date") in the United States Bankruptcy Court, Central District of California, Santa Ana Division.

3.  Venue is proper in this District pursuant to 28 U.S.C. § 1409, as this adversary proceeding arises under Title 11 or arises under or relates to a case under Title 11 which is pending in this District and does not involve a consumer debt of less than $5,000.00.

4.  This action is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (H).

5.  To the extent Plaintiff asserts claims under 11 U.S.C. § 544, Plaintiff alleges that there are one or more creditors holding unsecured claims allowable under 11 U.S.C. §502 or not allowable under 11 U.S.C. § 502(e), who can avoid the respective transfer as set forth hereinafter under California or other applicable law – specifically, the Internal Revenue Service as the requisite unsecured creditor utilizing relevant portions of the Internal Revenue Code and the California Uniform Fraudulent Transfer Act.

## PARTIES

6.  Plaintiff Richard A. Marshack is the duly appointed, qualified, and acting Chapter 7 Trustee for Debtor's bankruptcy estate.

7.  Defendant Arlene C. Biden aka Arlene C. Greer ("Defendant"), is and was at all times relevant herein, an individual residing in the County of Orange, State of California.

///

5447-000\1353574.1

2

# GENERAL ALLEGATIONS

8.   On January 22, 2018, Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code.

9.   Debtor's bankruptcy petition states that he lives at 19 Bridgeport, Newport Coast, California, 92657 (the "Property"). At all times since the Petition Date, the Property has been listed as Debtor's mailing address on the docket for his bankruptcy case available on the Court's CM/ECF website.

10.   Debtor confirmed at his 341(a) meeting of creditors (the "341(a)") that he currently resides at the Property. Furthermore, at the 341(a) Debtor confirmed he has continuously resided at the Property since it was purchased in 1994.

11.   On February 5, 2018, Debtor filed his Bankruptcy Schedules and Statement of Financial Affairs, which were signed by Debtor under penalty of perjury.

12.   At the 341(a) Debtor confirmed that: (1) he reviewed and signed his Bankruptcy Schedules and Statement of Financial Affairs; (2) he was personally familiar with the information contained within his Bankruptcy Schedules and Statement of Financial Affairs; (3) his Bankruptcy Schedules and Statement of Financial Affairs did not contain any errors or omissions; and (4) his Bankruptcy Schedules and Statement of Financial Affairs were true and correct.

13.   Debtor's Bankruptcy Schedule A indicates that he does not own or have any legal or equitable interest in any residence, building, land, or similar property.

14.   Debtor's Bankruptcy Schedule B only lists an interest in two categories of personal property, specifically $1,500 of "suits, shirts, jeans, [and] shoes" and a 100% ownership of the "Law Offices of Phillip B Greer APC" (the "Law Office") valued at $1,500.

15.   Debtor's Bankruptcy Schedule G lists no executory contracts or unexpired leases.

16.   Debtor's Bankruptcy Schedule J lists no expenses associated with: (1) "rental or home ownership expenses for [his] residence"; (2) "real estate taxes"; (3) "property, homeowner's, or renter's insurance"; (4) "home maintenance, repair, and upkeep expenses"; (5) "homeowner's association or condominium dues"; and/or (6) "additional mortgage payment for [his] residence."

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Centre Drive
Suite 600
Irvine, CA 92618

5447-000\1353574.1

3

17. Debtor's Statement of Financial Affairs confirms Debtor has not lived anywhere besides the Property "in the last 3 three years."

18. Debtor asserts in his Statement of Financial Affairs that he did not "make a payment on a debt [he] owed to anyone who was an insider" within one year before he filed bankruptcy.

19. Debtor asserts in his Statement of Financial Affairs that he did not "make any payments or transfer any property on account of a debt that benefitted an insider" within one year before he filed bankruptcy.

20. Debtor asserts in his Statement of Financial Affairs that he did not "give any gifts with a total value of more than $600 per person" within two years before he filed bankruptcy.

21. On September 14, 2017, Debtor testified under oath at a judgment debtor examination (the "JDE") in connection a state court judgment for $10,000,000.00 obtained by Chriss W. Street.

22. At the JDE, Debtor testified that: (1) he is an independent contractor for the Law Office; (2) the Law Office compensates him for his services by paying Debtor's obligations and expenses; (3) the Law Office does not pay the money directly to him – rather, funds are tendered directly to the "obligations that I want paid"; and (4) one such expense he directs the Law Office to pay is the mortgage on the Property, which is approximately "$4,500" per month.

23. At the JDE, Debtor testified that the Law Office has been paying the mortgage on the Property "since its inception" in furtherance of the compensation structure detailed in Paragraph 22 of this Second Amended Complaint.

24. At the 341(a), Debtor testified that he, by and through the process stated in Paragraphs 22 and 23 of this Second Amended Complaint, allegedly gifted money to his wife each month to pay the mortgage on the Property.

25. However, just a few months after the 341(a), Defendant asserted vis-à-vis declaration, signed under penalty of perjury and filed with the bankruptcy court, that "the arrangement with Mr. Greer was that he would pay rent on the [P]roperty in an amount equal to the mortgage payment."

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Centre Drive
Suite 600
Irvine, CA 92618

5447-000\1353574.1

4

26. Defendant's testimony detailed in Paragraph 25 of this Second Amended Complaint is reiterated by Debtor vis-à-vis declaration, signed under penalty of perjury and filed with the bankruptcy court, that "I agreed to act as a guarantor or co-signor on the underlying obligation and rent the [P]roperty from her in an amount equal to the monthly mortgage obligation."

27. Debtor's and Defendant's testimony regarding the payment of "rent" directly conflicts with Debtor's testimony at the 341(a) regarding mortgage payments being paid by a "gift" from Debtor to Defendant.

28. Furthermore, Debtor's testimony regarding his payment of the mortgage being purportedly based upon "rent" or "gift" directly contradicts statements made by Debtor in his Statement of Financial Affairs filed in his instant bankruptcy – specifically that: (1) he did not "make a payment on a debt [he] owed to anyone who was an insider" within one year before he filed bankruptcy; (2) he did not "make any payments or transfer any property on account of a debt that benefitted an insider" within one year before he filed bankruptcy; and/or (3) he did not "give any gifts with a total value of more than $600 per person" within two years before he filed bankruptcy.

29. Based upon the conflicting testimony provided by Debtor and Defendant regarding the purpose behind Debtor's payment of the mortgage on the Property since 1994, and as further addressed below, Debtor's payment of the mortgage and his transfer of the Property to Defendant appears to be part of a larger scheme and concerted effort between Debtor and Defendant to create the false illusion that Defendant solely owns all marital property – for the purpose of hindering, delaying, and/or defrauding Debtor's current and/or future creditors.

## FIRST CLAIM FOR RELIEF

**Avoidance and Recovery of Fraudulent Transfer of the Property to Defendant [11 U.S.C. § 544(b); 26 U.S.C. § 6502; Cal. Civ. Code § 3439.04;11 U.S.C. § 550]**

30. Plaintiff incorporates by reference Paragraphs 1 through 29 and re-alleges these paragraphs as though set forth in full.

31. Debtor and Defendant have been continuously married since December 1982.

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Centre Drive
Suite 600
Irvine, CA 92618

5447-000\1353574.1

5

32. On or about May 12, 1994, Debtor and Defendant purchased the Property and took title to the Property as husband and wife. Due to title being taken by Debtor and Defendant as husband and wife in the State of California during marriage, the Property was community property at the of purchase.

33. At the JDE, Debtor testified that the purchase price of the Property was "about 5-$600,000, something like that. Property records reflect that Debtor and Defendant purchased the Property for $590,000.00 (the "Purchase Price").

34. Property records reflect the Purchase Price was paid, in part, by a $472,000.00 loan obtained by Debtor and Defendant. Debtor's testified at the JDE that he was, and is, a guarantor of the consensual liens on the Property. However, Debtor failed to schedule on his Bankruptcy Schedules an amount owed to any creditor in connection with him being a purported guarantor of debt on the Property.

35. Based upon property records, Plaintiff is informed and believes, and based thereon alleges that Debtor is currently listed as a borrower, and by extension still liable, on all consensual liens on the Property.

36. Debtor's testimony at the 341(a), JDE, and declaration filed in support of Defendant's motion to dismiss Plaintiff's initial complaint confirm that on October 14, 2005, Debtor transferred his interest in the Property to Defendant, as her sole and separate property, by way of quit claim deed (the "Transfer").

37. Based upon Debtor's testimony at the 341(a), JDE, and declaration filed in support of Defendant's motion to dismiss Plaintiff's initial complaint, Debtor received no consideration from Defendant in exchange for the Transfer. Therefore, Debtor did not receive reasonably equivalent value in connection with his Transfer of the Property to Defendant

38. Plaintiff is informed and believes, and based thereon alleges that the Transfer of the Property to Defendant was done with actual intent to hinder, delay, or defraud Debtor's creditors. In particular, the Transfer appears to be part of a larger scheme and concerted effort between Debtor and Defendant to create the false illusion that Debtor personally owned very little and that

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Centre Drive
Suite 600
Irvine, CA 92618

5447-000\1353574.1

6

Defendant solely owned the majority of their marital property. For example:

(a) Debtor's testimony at the 341(a) and JDE establishes that Defendant sporadically worked part-time, if at all, at all times since Debtor and Defendant were married. Furthermore, Debtor's testimony as the 341(a) and JDE establish that Defendant's primary marital role was not as a wage-earner, but as a homemaker. At the JDE, Debtor was unable to explain how Defendant is able purchase, pay for, and/or maintain property which Debtor alleges is her sole and separate property given the fact Defendant works part-time, if at all.

(b) Defendant's testimony, as contained with her declaration in support of her motion to dismiss Plaintiff's initial complaint, is that she allegedly paid the entirety of the down payment associated with the purchase of the Property, derived in large part from the sale of real property located at 3 Toscany, Irvine, California (the "Toscany Property"). In her declaration, Defendant asserts that "Mr. Greer had no ability or authority to encumber the [Toscany Property] or access the equity. The [Toscany Property] was my separate property. Debtor's declaration in support of Defendant's motion to dismiss attempts to corroborate Defendant's assertion that the Toscany Property was exclusively Defendant's separate property. However, property records reflect that Debtor and Defendant held title to the Toscany Property as "joint tenants" and that both parties are listed as sellers of said property. As the Toscany Property was acquired by Debtor and Defendant during their marriage, it is presumed to be community property. In the alternative, Debtor had a separate property interest in the Toscany Property based upon the presumption of title. In any event, Defendant's assertion that she paid the down payment for the Property exclusively from her separate property is inaccurate.

(c) At the JDE, Debtor's testimony is that: all home furnishings, all art, and virtually all personal belongings at the Property are the separate property of Defendant; the Mercedes-Benz is owned solely by Defendant and that Debtor does not own a car; and that Defendant exclusively borrows cars from third-parties. As further represented in Debtor's Bankruptcy Schedules, Debtor's sole tangible asset is allegedly $1,500 worth of clothing.

5447-000\1353574.1

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Centre Drive
Suite 600
Irvine, CA 92618

7

Debtor's aforementioned assertions defy credulity in light of Debtor's admission that he and Defendant were supported by Debtor's work as an attorney and the fact that Defendant seldomly worked since their 1982 marriage.

(d) Debtor incurred over $100,000 in debt to the California Franchise Tax Board ("FTB") relating to debt in 2004, and Debtor's JDE testimony is that the FTB "grabbed most of the money they were owed." Debtor now testifies that he is compensated for his services rendered to the Law Office through the Law Office's payment of Debtor's expenses and obligations without the money passing directly to him – thus insuring Debtor personally never has much cash on hand for judgment creditors to levy or collect. For example: Debtor testified at the JDE that he had ten dollars, and Debtor's Bankruptcy Schedules reflect that he has $0.00 cash on hand and $0.00 in a bank account.

39. Debtor's testimony at the 341(a) is that he and Defendant previously filed a Chapter 7 bankruptcy sometime in the year 2000 (the "2000 Bankruptcy"). Debtor's testimony was that the bankruptcy was filed because of issues with a bonding company, but the case was ultimately dismissed for failure to file schedules. Due to the fact that Defendant worked part-time, if at all, the bonding issues precipitating the filing of the 2000 Bankruptcy were likely linked to Debtor's business/employment.

40. Plaintiff believes the intent and purpose of the Transfer was to put the Property in Defendant's name because her exposure and prospective liability to judgment creditors was much less likely than that of Debtor. Given Debtor's employment as an attorney and small business owner, his exposure to prospective claims, judgments, and liability far exceeded Defendant's exposure as a homemaker and part-time interior decorator. For example, the aforementioned bonding issues and/or the potential for a professional malpractice action being filed against Debtor – a possibility that materialized through the $10,000,000 malpractice judgment Chriss Street obtained against Debtor shortly before Petition Date (i.e. the only creditor scheduled by Debtor on his Bankruptcy Schedules).

///

5447-000\1353574.1

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Centre Drive
Suite 600
Irvine, CA 92618

8

41. By virtue of Debtor and Defendant being continuously married at all times relevant to this Second Amended Complaint, Defendant has been an insider of Debtor at all times relevant to the Transfer.

42. Debtor has retained possession or control of the Property by way of his continued residency at the Property at all times since the Transfer.

43. Debtor has directly or indirectly paid all mortgage payments on the Property since it was purchased by Debtor and Defendant. Furthermore, and based upon Debtor's statement at the 341(a) that Debtor and Defendant have supported themselves through Debtor's work, Plaintiff believes the majority of the taxes and maintenance costs associated with the Property were paid by Debtor at all times since purchase of the Property.

44. Property records and an asset search reveal that Debtor did not own any other real property at the time of the Transfer.

45. The Transfer was made at a time in close proximity to Debtor's indebtedness to the Internal Revenue Service (the "IRS"). In particular, Debtor's JDE testimony was that he has been audited numerous times by the IRS and that he has "been in a 10-year battle with the IRS." Debtor's "battle" with the IRS relates back to tax liability incurred as early as 2002 – and which now includes tax liability for at least the years of 2004, 2007, 2008, 2010, 2011, 2012, 2013, 2014, 2015, 2016 – totaling over $500,000 in tax liability, some of which is reflected by tax liens on the Property. Consistent with Debtor's failure list debt associated with the Property on his Bankruptcy Schedules, Debtor failed to schedule any amount due and owing to the IRS.

46. Based upon Debtor's and Defendant's conflicting testimony at the 341(a), JDE, declarations, Bankruptcy Schedules, and Statement of Financial Affairs [as detailed in Paragraphs 15, 16, 18, 19, 20 and 24 through 29 of this Second Amended Complaint] – coupled Debtor's failure to schedule a community or separate interest in the Property, Debtor's failure to schedule any of his personal liability on the consensual liens on the Property, and Debtor's failure to schedule any debt owed to the IRS – Debtor has concealed, or attempted to conceal, his true interest in the Property.

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Centre Drive
Suite 600
Irvine, CA 92618

5447-000\1353574.1

9

47. Therefore, the Property was fraudulently conveyed to Defendant and the Transfer can be avoided and recovered by the Trustee as an actual fraudulent transfer.

## SECOND CLAIM FOR RELIEF

### Declaratory Relief That Defendant Holds the Property as Constructive Trustee for the Benefit of Debtor and the Marital Community

48. Plaintiff hereby incorporates by reference Paragraphs 1 through 47 and re-alleges these paragraphs as though set forth in full.

49. As a result of the Transfer, Defendant has been unjustly enriched at the expense of Debtor and Debtor's marital community.

50. By reason of the fraudulent and/or inequitable nature of the Transfer in which Defendant obtained her alleged right, claim or interest in the Property, Defendant has no legal or equitable "separate property" right, claim or interest in the Property.

51. Therefore, Defendant is an involuntary trustee holding the Property in constructive trust for Debtor, and her marital community with Debtor, with the duty to convey same to Plaintiff as community property.

## THIRD CLAIM FOR RELIEF

### Turnover of Property Held by Defendant in Constructive Trust [11 U.S.C. § 542]

52. Plaintiff hereby incorporates by reference Paragraphs 1 through 51 and re-alleges these paragraphs as though set forth in full.

53. The Property is property of Debtor's bankruptcy estate, as that term is used and defined in the Bankruptcy Code.

54. Defendant is the involuntary trustee holding the Property in constructive trust for Debtor, and her marital community with Debtor, with the duty to convey same to Debtor as community property.

55. The Property is not of inconsequential value or benefit to the estate.

56. Therefore, Defendant must deliver and immediately turnover the Property to Plaintiff.

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Centre Drive
Suite 600
Irvine, CA 92618

5447-000\1353574.1

10

## FOURTH CLAIM FOR RELIEF

**Declaratory Relief That Debtor Holds a Community or Separate Property Interest in the Property**

57. Plaintiff hereby incorporates by reference Paragraphs 1 through 56 and re-alleges these paragraphs as though set forth in full.

58. Debtor has retained possession or control of the Property by way of his continued residency at the Property at all times since the Transfer.

59. Debtor has directly or indirectly paid the majority of the mortgage payments, taxes, and maintenance costs associated with the Property at all times since the Transfer.

60. By virtue of the compensation structure and procedure between Debtor and the Law Office, Debtor used his separate property funds and/or community property funds to pay the mortgage, taxes, and maintenance on the Property.

61. Debtor's use of community funds or his separate funds to pay the mortgage, taxes, and maintenance on the Property post-Transfer establishes that he has an interest in the Property which is property of Debtor's bankruptcy estate.

62. Therefore, Plaintiff is entitled to declaratory relief that Debtor holds a community interest, or separate interest, in the Property in an amount to be determined at trial.

## FIFTH CLAIM FOR RELIEF

**Authorization for Trustee to Sell the Entirety of the Property [11 U.S.C. § 363(h)]**

63. Plaintiff hereby incorporates by reference Paragraphs 1 through 62 and re-alleges these paragraphs as though set forth in full.

64. If Defendant is found to have a separate property interest in the Property, Plaintiff desires to monetize Debtor's community property interest in the Property by way of a sale of the entirety of the Property.

65. Partition in kind of the Property among Debtor's bankruptcy estate and Defendant is impracticable.

66. Plaintiff's sale of the estate's undivided interest in the Property would realize significantly less for the estate than sale of such property free of the interests of Defendant.

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Centre Drive
Suite 600
Irvine, CA 92618

67. The benefit to the estate of a sale of the Property free of the interest of Defendant outweighs the detriment, if any, to Defendant.

68. The Property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

69. Therefore, Plaintiff requests authorization to sell the entirety of the Property pursuant to Bankruptcy Code Section 363(h).

**WHEREFORE**, the Trustee prays that judgment be entered as follows:

1. On the First Claim for Relief, for avoidance of the Transfer and recovery of the Property;

2. On the Second Claim for Relief, for declaratory relief that Defendant holds the Property as constructive trustee for the benefit of Debtor and the marital community;

3. On the Third Claim for Relief, for turnover of the Property;

4. On the Fourth Claim for Relief, for declaratory relief that Debtor holds a community property interest in the Property in an amount to be determined at trial;

5. On the Fifth Claim for Relief, for authorization that Plaintiff may sell the entirety of the Property notwithstanding the interests, if any, of Defendant in the Property; and

6. For such other and further relief as the Court may deem just and proper.

**SHULMAN HODGES & BASTIAN LLP**

Dated: April 10, 2019    */s/ Ryan D. O'Dea*
Leonard M. Shulman
James C. Bastian
Ryan D. O'Dea
Attorneys for Richard A. Marshack, Chapter 7 Trustee

SHULMAN HODGES &
BASTIAN LLP
100 Spectrum Centre Drive
Suite 600
Irvine, CA 92618

5447-000\1353574.1

12

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
100 Spectrum Center Drive, Suite 600, Irvine, CA 92618

A true and correct copy of the foregoing document entitled (*specify*): **CHAPTER 7 TRUSTEE'S SECOND AMENDED COMPLAINT FOR: (1) AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFER; (2) CONSTRUCTIVE TRUST; (3) DECLARATORY RELIEF; (4) TURNOVER OF ESTATE PROPERTY; AND (5) AUTHORIZATION TO SELL ENTIRETY OF REAL PROPERTY REGARDING REAL PROPERTY LOCATED AT 19 BRIDGEPORT RD., NEWPORT COAST, CALIFORNIA** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On April 10, 2019, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

   - **Timothy C Aires**    tca@arlawyers.com, mdkhan@arlawyers.com
   - **Richard A Marshack (TR)**    pkraus@marshackhays.com, rmarshack@iq7technology.com
   - **Ryan D O'Dea**    rodea@shbllp.com, LGauthier@shbllp.com
   - **United States Trustee (SA)**    ustpregion16.sa.ecf@usdoj.gov

   ☐ Service information continued on attached page

2. **SERVED BY UNITED STATES MAIL**:
On April 10, 2019, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

   ☒ Service information continued on attached page

3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

   ☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 4/10/19 | Lori Gauthier | /s/ Lori Gauthier |
|---|---|---|
| Date | Printed Name | Signature |

5447-000\1353574.1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                                                F 9013-3.1.PROOF.SERVICE

**SERVED BY UNITED STATES MAIL**:

**Phillip Greer**
Law Offices of Phillip Greer APC
1300 Bristol St North Suite 100
Newport Beach, CA 92660

Honorable Mark S. Wallace
U.S. Bankruptcy Court
Central District of California
Ronald Reagan Federal Bldg & Courthouse
411 West Fourth Street, Suite 6135
Santa Ana, CA 92701-4593

5447-000\1353574.1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012     **F 9013-3.1.PROOF.SERVICE**